

GEORGE S. CANELLOS
Regional Director
Attorney for the Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center – Suite 400
New York, New York 10281
(212) 336-0106 (Jack Kaufman, Senior Trial Counsel)
Email: Kaufmanja@sec.gov

**11 CIV 1778**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

           - against -

JUNO MOTHER EARTH ASSET
MANAGEMENT, LLC, EUGENIO VERZILI and
ARTURO ALLAN RODRIGUEZ LOPEZ a/k/a
ARTURO RODRIGUEZ,

                    Defendants.

-------------------------------------------------------------------x

11 Civ. _____ ( )

ECF CASE

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its complaint against

defendants Juno Mother Earth Asset Management, LLC ("Juno"), Eugenio Verzili ("Verzili")

and Arturo Allan Rodriguez Lopez a/k/a Arturo Rodriguez ("Rodriguez" or, together with Juno

and Verzili, the "Defendants"), alleges:

## SUMMARY

1.     This action concerns Defendants' multi-faceted scheme to defraud a hedge fund

under their control, as well as the investors in the fund, and the Defendants' failure to comply

with their fiduciary obligations to the hedge fund. From at least 2007 to the present, Juno,

Verzili and Rodriguez: (a) misappropriated approximately $1.8 million of assets from a Juno-advised hedge fund; (b) fraudulently concealed their misappropriation from the fund's independent directors; (c) inflated and misrepresented Juno's assets under management ("AUM") by approximately $40 million; (d) filed false Forms ADV with the Commission that, among other things, failed to disclose transactions between Juno and the hedge fund; (e) concealed Juno's precarious financial condition; and (f) misrepresented the amount of capital certain Juno partners had invested in a Juno-advised fund.

## VIOLATIONS OF THE FEDERAL SECURITIES LAWS

2.      By virtue of the conduct alleged in this complaint, Defendants, directly or indirectly, singly or in concert, have engaged and are engaged in transactions, acts, practices, or courses of business that constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder; and Sections 203A, 206(1), 206(2), 206(4) and 207 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-3A, 80b-6(1), (2) and (4), and 80b-7], and Rules 206(4)-2, 206(4)-4 and 206(4)-8 thereunder [17 C.F.R. §§ 275.206(4)-2, 275.206(4)-4, and 275.206(4)-8].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

3.      The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], and Section 209 of the Advisers Act [15 U.S.C. §80b-9].

4.      The Commission seeks a judgment (a) permanently enjoining Defendants from committing future violations of the provisions of the federal securities laws that the Commission alleges against them; (b) ordering Defendants, on a joint and several basis, to disgorge their ill-

gotten gains with prejudgment interest thereon; (c) ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209 of the Advisers Act [15 U.S.C. §80b-9]; and (d) ordering such other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)], Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa], and Sections 209 and 214 of the Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14].

6.     Venue is proper in the Southern District of New York pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].  The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of businesses alleged herein.  A substantial portion of the events comprising Defendants' fraudulent scheme that gives rise to the Commission's claims occurred in the Southern District of New York, including that, during the relevant period, Juno, an investment adviser registered with the Commission, maintained its principal place of business in this District; Defendants misappropriated investor funds for personal use from this District; Defendants directed misappropriated funds be sent to a Juno bank account in this District; Defendants spent a significant portion of the misappropriated funds in this District, including on a corporate apartment for Verzili and Rodriguez located in this District; and Defendants made material misrepresentations and omitted to provide material facts in this District, including in communications with Juno's lawyers.

3

## DEFENDANTS

7.    **Juno** is a Delaware limited liability company that has been registered as an

investment adviser with the Commission since November 2007. In the period relevant to this

complaint, Juno's principal place of business was New York, New York. Verzili and Rodriguez

each owned at least 25% of Juno and controlled the day-to-day operations of Juno.

8.    **Rodriguez**, age 47, resides in Costa Rica. In the period relevant to this

complaint, Juno maintained an apartment for Rodriguez and Verzili in New York, New York,

and Rodriguez divided his time between New York and Costa Rica. Rodriguez is a member of

Juno and served as a Portfolio Manager and, beginning in 2008, the Chief Investment Officer of

Juno.

9.    **Verzili**, age 44, resides in Miami Beach, Florida. In the period relevant to this

complaint, Verzili divided his time between Miami and New York. Verzili is a member of Juno

and has been the Chief Executive Officer of Juno since approximately 2006 and, as of December

2007, the Chief Compliance Officer. In various documents (such as Part II of Juno's Form ADV

dated July 25, 2008), Verzili falsely claimed that he attended Boston University. In fact, he

never attended any school associated with Boston University.

## FACTS

I.    **Background**

10.    Juno served as the investment manager to three hedge funds: the Juno Mother Earth

Resources Fund, Ltd. ("Resources Fund"), the Juno Mother Earth Equity Fund, L.P. and the Juno

Mother Earth Commodity Fund, L.P.

11.    The Resources Fund is a hedge fund incorporated in the Cayman Islands.

Rodriguez and two other individuals served as directors of the Resources Fund. The two other

4

individuals were employees of a Cayman Islands firm called Walkers SPV and, as stated in the Resources Fund's private placement memorandum ("PPM"), were not "affiliated" with Juno (the "Independent Directors").

12.     According to the Resources Fund PPM dated March 2007: the "investment objective of the [Resources] Fund [was] to achieve portfolio diversification and long-term capital growth.  The [Resources] Fund invests in commodities as well as equity securities of companies around the world involved directly or indirectly in the production, refinement, distribution, exploration and research of natural resources, non tradable commodities, as well as renewable & alternative energy, including companies with an environmental focus."

13.     In 2007, Fortis Prime Fund Solutions (Cayman) Limited ("Fortis") acted as the Resources Fund's administrator, providing administrative services and acting as registrar and transfer agent for the Resources Fund.

14.     In 2008, Spectrum Global Fund Administration (Cayman) ("Spectrum") acted as the Resources Fund's administrator, providing administrative services and acting as registrar and transfer agent for the Resources Fund.

15.     In late 2006, Juno began offering investors securities in the Resources Fund.

16.     In 2006 and 2007, Juno raised a total of approximately $16 million from investors in the Resources Fund.

17.     By the middle of 2008, substantially all of the Resources Fund investors had sought redemption of their securities in the fund, and Juno ceased offering Resources Fund securities.

II.    **Misappropriation of Resources Fund Assets**

18.    In 2007 and 2008, Verzili and Rodriguez directed Juno to withdraw a total of approximately $1.8 million from Resources Fund brokerage and commodity accounts for improper purposes and intentionally concealed those misappropriations from Fortis, the Independent Directors, Juno's lawyers, and Resources Fund investors.

19.    In 2007 and 2008, Verzili and Rodriguez fraudulently misappropriated a total of at least $642,000 of the approximately $1.8 million by mischaracterizing withdrawals from the Resources Fund as payment of Resources Fund's expenses when, in fact, Defendants used the transferred cash for their own benefit.

20.    In 2008, Verzili and Rodriguez fraudulently misappropriated an additional approximately $1.17 million of the approximately $1.8 million from the Resources Fund brokerage and commodity accounts.  Verzili and Rodriguez did so by transferring approximately $1.17 million in return for a series of undisclosed, promissory notes issued to the Resources Fund by Juno itself.  The sole purpose of these cash transfers was to benefit Defendants.

21.    Defendants misappropriated the $1.8 million through at least 41 separate transactions, by effecting purchases and sales of securities in Resources Fund brokerage accounts and directing the transfer of the proceeds to Juno bank accounts.  Verzili and Rodriguez used the misappropriated $1.8 million for improper purposes, such as paying Juno's business expenses and their own personal expenses, including rent for an apartment occupied by Verzili and Rodriguez ($9,500 per month); travel, meals, entertainment, and purchases from department stores.

A.    **Misappropriation Disguised as Organizational Expenses**

22.    From its inception and throughout its existence, Juno had difficulty meeting its financial obligations and generally was in a precarious financial position.

23.    In 2007 and 2008, the Resources Fund PPM stated that "[Juno] will bear the costs of providing its services to the [Resources] Fund, including overhead, office, and salary expenses." The PPM further stated that the Resources Fund itself would pay for "expenses relating to the [Resources] Fund's investment program," including the fund's "organizational expenses."

24.    Beginning in February 2007 through December 2007, Verzili and Rodriguez caused the withdrawal of cash from the Resources Fund accounts for what the Defendants subsequently claimed were organizational expenses of the Resources Fund.  However, contrary to the PPM, Verzili and Rodriguez used at least $555,000 of those funds not for Resources Fund obligations but for improper purposes such as paying Juno's business expenses and Verzili's and Rodriguez's personal expenses.

25.    Verzili and Rodriguez also improperly caused the withdrawal of an additional $87,000 from Resources Fund brokerage and commodity accounts in 2008 to pay Juno's and their personal expenses.

26.    Verzili and Rodriguez failed to disclose to the Independent Directors, and intentionally concealed from them, the Defendants' improper use of Resources Fund assets.  The Independent Directors never approved Juno's use of the Resources Fund cash for purposes that were not obligations of the Resources Fund.  In this manner, Defendants fraudulently misappropriated a total of at least $642,000 in 2007 and 2008 from the Resources Fund, and Defendants have not returned any of this misappropriated cash to the Resources Fund.

27.     At the time that Defendants withdrew the assets from the Resources Fund brokerage and commodity accounts, they knew or recklessly disregarded that the withdrawals were improper and were not for payment of "organizational expenses" or other legitimate expenses of the fund but, rather, were being used for prohibited purposes such as paying expenses of Juno as well as their personal expenses.

28.     Defendants knew or recklessly disregarded that the Resources Fund's own PPM, which Juno distributed to prospective investors, prohibited Juno from using the Resources Fund's assets in this manner.  Moreover, as investment managers to the Resources Fund, Defendants knew or recklessly disregarded that their use of Resources Funds cash for such purposes was not permitted.

29.     In or about December 2007, Fortis asked Rodriguez that Juno provide support for its withdrawals of cash from the Resources Fund.  In response, Rodriguez falsely told Fortis that the claimed expenses were "organizational expenses" of the Resources Fund that the Resources Fund was contractually required to pay.  At or about the same time, Fortis informed the Independent Directors that Verzili and Rodriguez had been causing the transfer of funds from the Resources Funds to Juno without adequate support.

30.     In or about early 2008, realizing the difficulty of continuing to transfer funds under the guise of "organizational expenses," Verzili and Rodriguez began their fraudulent, undisclosed, promissory notes scheme in order to misappropriate additional Resources Fund assets.

**B.     Misappropriation Disguised as Investments in Juno**

31.     From January 9 to July 24, 2008, Verzili and Rodriguez misappropriated approximately $1.17 million from the Resources Fund under the guise of purported investments

8

by the Resources Fund in Juno. Verzili and Rodriguez caused Juno to issue to the Resources Fund a series of nine promissory notes (the "Promissory Notes") in exchange for the Resources Fund's payment of a total of approximately $1.17 million to Juno, while fraudulently concealing these self-dealing investments from the Resources Fund's Independent Directors.

32.     Defendants concocted these purported investments not to benefit the Resources Fund but, rather, solely to obtain cash for Juno, to pay its operating expenses and prevent Juno from going out of business.

33.     To carry out their fraudulent scheme, on nine separate occasions between January 9 and July 24, 2008, Verzili and Rodriguez transferred, or caused to be transferred, a total of approximately $1.17 million from the Resources Fund brokerage and commodity accounts to Juno's bank account.

34.     Rodriguez, on behalf of Juno, and with Verzili's knowledge, executed the Promissory Notes, and issued them to the Resources Fund, in the principal amount of each cash transfer.

35.     Verzili and Rodriguez issued letters of authorization to account custodians for the Resources Fund's brokerage and commodity accounts for the transfer of the $1.17 million. In six of the nine letters, Verzili and Rodriguez intentionally misrepresented that the requested cash transfers were for "management and performance fee advance[s]" and in the seventh, the Defendants intentionally misrepresented that the cash transfers were for "management and performance fees." The Defendants had not, however, earned such management and performance fees from the Resources Fund.

36.     Defendants had a fiduciary duty to the Resources Fund to disclose to the Independent Directors any conflict of interest in the management of assets of the Resources

Fund, including the Defendants' withdrawal of cash for their own benefit and issuance of Juno Promissory Notes to the Resources Fund.

37.     Prior to October 2008, Defendants failed to disclose the existence of the Promissory Notes (and related funds transfers) to the Independent Directors. When the Independent Directors learned of the Promissory Notes, they promptly demanded that the Defendants pay such sums – as well as the improperly characterized organizational expenses – back to the Resources Fund.

38.     Both Verzili, as a Juno member, its CEO and Chief Compliance Officer, and Rodriguez, as a Juno member, its Portfolio Manager and Chief Investment Officer, knew or recklessly disregarded that the Resources Fund's "investment" of $1.17 million in the Juno Promissory Notes constituted patent self-dealing that Verzili and Rodriguez were required to disclose to Juno's Independent Directors. Furthermore, both Verzili and Rodriguez intentionally concealed the Promissory Notes from the Independent Directors in order to carry out the fraudulent scheme.

39.     In addition to failing to disclose the existence of the Promissory Notes, Verzili and Rodriguez made material misrepresentations and omissions to the Independent Directors to hide the existence of the Promissory Notes from the Independent Directors. For example, both Verzili and Rodriguez participated in an August 2008 board meeting in which Verzili advised the Independent Directors that the Resources Fund's positions were highly liquid, and Rodriguez indicated that the majority of the fund's assets were in liquid equity holdings with a less significant holding in futures. These statements were false.

40.     Both Verzili and Rodriguez knew or recklessly disregarded that the Promissory Notes were part of the Resources Fund's portfolio and were not liquid investments.

41.     Further, Rodriguez falsely told one investor ("Investor A") – who had questioned the movement of cash from the Resources Fund brokerage account to Juno's bank account – that the receiving bank account did not belong to Juno.

42.     In October 2008, upon learning of the Promissory Notes, the Independent Directors removed Rodriguez as a director of the Resources Fund.

43.     Defendants have not reimbursed the Resources Fund for any of the approximately $1.17 million of assets misappropriated pursuant to their fraudulent Promissory Notes scheme.

## III.    Misrepresentations to Investors

### A.    Misrepresentations Concerning Organizational Expenses and Promissory Notes

44.     By email dated May 2, 2007, Verzili provided Investor A – then a prospective investor – with Juno's March 2007 PPM and a Due Diligence Questionnaire ("DDQ"). Verzili simultaneously sent Rodriguez the same e-mail. As alleged above, the PPM included representations that Juno would bear its own expenses and that the Resources Fund would pay for expenses relating to the fund's investment program, including organizational expenses.

45.     By email dated May 22, 2007, in response to an inquiry from Investor A regarding the Resources Fund's obligation to reimburse Juno for expenses, Verzili falsely told Investor A that Juno would claim a total of only $100,000 in operational expenses, plus an unspecified amount of "standard fund fees," and that Juno would amortize the claimed amount over five years.

46.     As of May 22, 2007, however, Verzili and Rodriguez knew they already had caused the improper transfer of $137,000 from the Resources Fund for purported operational expenses and were already engaged in their scheme to further misappropriate assets from the Resources Fund.

47.     Moreover, Juno prepared revised PPMs for the Resources Fund in January and February 2008. Despite the fact that the Defendants already had misappropriated at least

11

$555,000 from the Resources Fund under the guise of organizational expenses, the January and February 2008 PPMs continued to falsely state that Juno was paying for its own expenses and the Resources Fund was paying for expenses related to its investment program.

48.     Furthermore, according to the January and February 2008 PPMs, the Resources Fund aimed "to achieve portfolio diversification via investments in commodity futures and commodity linked equities."

49.     Juno, acting under the direction of Verzili and Rodriguez, distributed Resources Fund PPMs to additional prospective investors in 2007 and 2008.

50.     Investor A received the February Resources Fund PPM in 2008.

51.     Juno also distributed monthly newsletters to Resources Fund investors stating that the Resources Fund "aims to achieve portfolio diversification via investments in commodity futures and commodity related equities."

52.     In particular, the March 2008 monthly newsletter noted "[a] 70% exposure to commodities and 30% exposure to equities, we believe, provides the most effective risk-adjusted strategy."

53.     As Verzili and Rodriguez knew or recklessly disregarded, the statements in paragraphs 48, 51 and 52 above were false because of the existence of the Promissory Notes, which Verzili and Rodriguez intentionally failed to disclose to potential investors.

**B.  Misrepresentations Concerning Assets Under Management**

54.     Throughout its existence, Juno's AUM never exceeded approximately $17 million.

55.     Verzili and Rodriguez both knew or recklessly disregarded the fact that Juno's AUM never exceeded $17 million.

56.     Nonetheless, in an April 4, 2007 email, Verzili falsely represented to then-prospective Investor A that Juno was an "[a]sset management group with over $100 million" of AUM.

57.     Almost one year later, Verzili falsely inflated Juno's AUM by approximately 100 percent – claiming in an email to another prospective investor that Juno's AUM was "$200 million, but the Juno funds represent about $56 million" of AUM.

58.     In March 2008, in an effort to convince Investor A to rescind its request to withdraw funds from the investor's account, Verzili intentionally provided Investor A with false documents when Investor A requested written support for the claimed $56 million AUM in the Juno funds. Verzili fraudulently altered a document to make it appear that Juno managed approximately $40 million in assets that, in reality, were managed by a completely separate investment adviser called Mother Earth Investments AG. Verzili obtained a document from a foreign bank concerning a particular investment and accurately listing Mother Earth Investment AG as the investment's manager. Verzili then altered the document to falsely state that Juno was a co-manager of that investment. Verzili provided a doctored email to Investor A, falsely representing to Investor A that Juno's AUM legitimately included the value of the Mother Earth Investments AG managed investment. Verzili simultaneously sent Rodriguez the same fabricated e-mail.

59.     Verzili and Rodriguez both knew or recklessly disregarded that Juno did not provide investment advisory services concerning the $40 million investment alleged above.

C.     **Misrepresentations Concerning Partners' Capital**

60.     On May 2, 2007, Verzili sent then-prospective Investor A a DDQ that falsely claimed that Juno had launched the Resources Fund "with $3 million of partner assets" and that

the "principals of the fund are committed to investing at least 20% of gross dividends back into the fund on a permanent basis." Verzili simultaneously sent Rodriguez the same e-mail.

61.   Similarly, on July 8, 2008, in an effort to get a second investor ("Investor B") to rescind its request to withdraw funds from the investor's account, Verzili falsely represented that Juno's partners had $1 million of their own capital invested in the Resources Fund. Specifically, in response to a request from Investor B, Verzili sent a DDQ stating that "[p]artner capital [in the fund] is currently $1 million" and "[t]he partners have no intention of redeeming their investment in the fund." Verzili simultaneously sent Rodriguez the same e-mail.

62.   At the time that Verzili made the false statements concerning the partners' capital, with Rodriguez's knowledge, Verzili and Rodriguez knew or recklessly disregarded that none of the Juno partners ever invested any of their own money in the Resources Fund.

**IV.   Juno's False Forms ADV**

63.   Investment advisers registered with the Commission are required to file a Form ADV with the Commission. The Form ADV contains certain required disclosures concerning the investment adviser and is available for review by the general public. The Commission also requires registered investment advisers to maintain a minimum of $25 million in AUM.

64.   In November 2007, Juno, through its attorney, filed its initial Form ADV with the Commission, claiming on the form $14 million in AUM and relying on an Advisers Act exemption that allows a new investment adviser to register if it reasonably believes that it will qualify for registration within 120 days. That exemption requires the adviser to withdraw its registration if, at the end of the 120 day period, it has not satisfied the $25 million minimum AUM requirement.

65.     In February 2008, Juno did not meet the requisite $25 million in AUM and, thus, was required to file a Form ADV-W to withdraw its registration.

66.     Nonetheless, Verzili and Rodriguez deceptively caused Juno's attorney to file with the Commission a false amended Form ADV for Juno.  Verzili falsely informed Juno's attorney that Juno had entered into an agreement with a separate investment adviser (Mother Earth Investments AG), whereby Juno would sub-advise that adviser's investment products.  On this false basis, Verzili advised Juno's attorney that Juno's AUM were $56 million, comprised of $16 million from the Resources Fund and $40 million from Mother Earth Investment AG.  In fact, Juno and Mother Earth Investments AG never entered into any such agreement and therefore Juno had no legitimate basis to claim that it managed $40 million in additional funds.

67.     Rodriguez was aware of, and participated in, the decision to mislead Juno's attorney concerning Juno's AUM and Form ADV filing.

68.     Based on representations he received from Verzili, Juno's attorney filed with the Commission the false amendment to Juno's Form ADV containing the inflated AUM, which provided the inaccurate basis for Juno's registration as an investment adviser.  Juno's attorney filed the amendment in February 2008 and it became public in March 2008.

69.     Verzili and Rodriguez also did not disclose the existence of the Promissory Notes to Juno's attorney when the attorney was preparing the March 2008 and April 2008 amendments to Juno's Form ADV.

70.     Juno's March 2008 and April 2008 amendments to its Form ADV also contained the following additional material misstatements:

- that Juno did not buy securities for itself from advisory clients, or sell securities that it owned to advisory clients (principal transactions) (Part I, Item 8.A);

- that Juno did not recommend the purchase or sale of securities to advisory clients for which it or any related person had any other sales interest (Part I, Item 8.C); and

- that Juno did not have custody of any advisory clients' (a) cash or bank accounts or (b) securities (Part I, Item 9.A).

Juno's Form ADV was materially inaccurate because (a) Juno had entered into principal transactions with the Resources Fund (the Promissory Notes) in which it, Verzili, and Rodriguez had an interest; and (b) Juno had used its authority to withdraw and take custody of client assets. Verzili approved the amendments and both Verzili and Rodriguez knew or recklessly disregarded that the Form ADV contained these false statements.

## FIRST CLAIM FOR RELIEF
### (Against all Defendants)
### Violations of Section 17(a) of the Securities Act,
### Section 10(b) of the Exchange Act, and Rule 10b-5

71.    Paragraphs 1 through 70 are re-alleged and incorporated by reference as if fully set forth herein.

72.    The Defendants, directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce, or of the mails, or of the facility of a national securities exchange, in the offer and sale, and in connection with the purchase or sale, of securities, knowingly or recklessly:  (a) employed devices, schemes and artifices to defraud; (b) obtained money or property by means of, or otherwise made, untrue statements of material fact, or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in transactions, acts, practices, and courses of business which operated or would have operated as a fraud or deceit upon purchasers of securities and upon other persons.

73. By reason of the activities described herein, and in particular the intentional false statements and omissions described above, the Defendants violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## SECOND CLAIM FOR RELIEF
### (Against All Defendants)
### Violations of Sections 206(1) and Section 206(2)
### of the Advisers Act

74. Paragraphs 1 through 70 are re-alleged and incorporated by reference as if fully set forth herein.

75. Defendants at all relevant times were investment advisers within the meaning of Section 202(11) of the Advisers Act [15 U.S.C. § 80b-2(11)].

76. Defendants, directly or indirectly, singularly or in concert, knowingly or recklessly, by the use of the means or instruments of transportation or communication in interstate commerce, or of the mails, while acting as investment advisers: (a) have employed devices, schemes and artifices to any client or prospective client; or (b) have engaged in transactions, acts, practices and courses of business which operated as fraud and deceit upon any client or prospective client.

77. As investment advisers to the Resources Fund, Defendants owed the Resources Fund (and its Independent Directors) fiduciary duties of utmost good faith, fidelity, and care to make full and fair disclosure to them of all material facts concerning the Resources Fund – including any conflicts or potential conflicts of interests – as well as the duty to act in the Resources Fund's best interests, and not to act in Defendants' own interests to the detriment of the Resources Fund.

78. The Defendants breached their fiduciary duties to the Resources Fund, engaged in fraudulent conduct and engaged in a scheme to violate Sections 206(1) and 206(2) of the

17

Advisers Act. For example, the Defendants misappropriated approximately $1.8 million from the Resources Fund and concealed their theft from the Independent Directors.

79. The Defendants further breached their fiduciary duties to the Resources Fund, engaged in fraudulent conduct, and furthered their fraudulent scheme, in violation of Sections 206(1) and 206(2) of the Advisers Act, by knowingly or recklessly making the additional material misrepresentations and omissions described above.

80. By reason of the activities described herein, the Defendants violated Sections 206(1) and 206(2) of the Advisers Act.

**THIRD CLAIM FOR RELIEF**
**(Against All Defendants)**
**Violations of Section 206(4) of the Advisers Act**
**and Rule 206(4)-8 Thereunder**

81. Paragraphs 1 through 70 are re-alleged and incorporated by reference as if fully set forth herein.

82. Defendants, acting as investment advisers, directly or indirectly, (a) made untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading to any investor or investor in a Juno-managed fund; (b) otherwise engaged in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in a Juno-managed fund.

83. Defendants violated Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder by knowingly, recklessly or negligently making the material misrepresentations and omissions described above.

84. By reason of the activities described herein, the Defendants violated Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

## FOURTH CLAIM FOR RELIEF
### (Against All Defendants)
### Violations of Section 206(4) of the Advisers Act
### and Rule 206(4)-2 Thereunder

85.     Paragraphs 1 through 70 are re-alleged and incorporated by reference as if fully set forth herein.

86.     Advisers Act Section 206(4) and Rule 206(4)-2 thereunder require a registered investment adviser to a pooled investment vehicle, such as a hedge fund, that has custody of client assets to either undergo a surprise annual examination by an independent accountant or have the fund's audited financial statements distributed to investors.

87.     Beginning in November 2007 and during the time period covered by the complaint, Juno was an investment adviser to the Resources Fund, a pooled investment vehicle, and was registered with the Commission.

88.     During the period covered by this complaint, Juno had custody and control over the Resources Fund's assets.

89.     The Resources Fund never underwent a surprise annual examination by an independent accountant nor provided investors with audited financial statements.

90.     Verzili and Rodriguez both knew or recklessly disregarded that Juno had custody and control over the Resources Fund assets and both knew or recklessly disregarded that the Resources Fund never underwent a surprise annual examination by an independent accountant nor provided Resources Fund investors with audited financial statements.

91.     By reason of the activities described herein, Juno violated Section 206(4) of the Advisers Act and Rule 206(4)-2 thereunder, and Verzili and Rodriguez aided and abetted such violations.

## FIFTH CLAIM FOR RELIEF
### (Against All Defendants)
### Violations of Section 206(4) of the Advisers Act
### and Rule 206(4)-4 Thereunder

92.     Paragraphs 1 through 70 are re-alleged and incorporated by reference as if fully set forth herein.

93.     Advisers Act Section 206(4) and Rule 206(4)-4 require a registered investment adviser that has discretionary authority or custody over clients' funds to disclose to its clients any financial condition of the adviser that is reasonably likely to impair the ability of the adviser to meet contractual commitments to clients.

94.     During the relevant period covered by this complaint, Juno had custody over its clients' funds, and its financial condition reasonably impaired its ability to meet its contractual commitments to its clients as demonstrated by the fact that Defendants misappropriated cash from the Resources Fund in order to underwrite Juno's operations.

95.     During the relevant period covered by this complaint, Verzili and Rodriguez both were aware of Juno's impaired financial condition.

96.     Verzili and Rodriguez knowingly or recklessly omitted to disclose Juno's precarious financial condition to the Independent Directors and, in fact, took steps to conceal from them that the Defendants were misappropriating cash to fund Juno's operations.

97.     By reason of the activities described herein, Juno violated Section 206(4) of the Advisers Act and Rule 206(4)-4 thereunder, and Verzili and Rodriguez aided and abetted such violations.

## SIXTH CLAIM FOR RELIEF
### (Against All Defendants)
### Violations of Section 203A of the Advisers Act

98.     Paragraphs 1 through 70 are re-alleged and incorporated by reference as if fully set forth herein.

99.     Advisers Act Section 203A generally prohibits investment advisers from registering with the Commission unless they manage at least $25 million in assets.  Advisers Act Rule 203A-2(d)(1), however, provides that a newly-formed adviser, not immediately eligible for Commission registration, can nonetheless register, if the adviser is not presently required to register with a state securities regulator and if the adviser reasonably expects to qualify for Commission registration within 120 days.  An adviser must, however, file a Form ADV-W and withdraw its registration if, at the end of the 120 day period, it has still has not qualified for registration.

100.    By reason of the activities described in paragraphs 63-68 above, Juno violated Rule 203A of the Advisers Act, and Verzili and Rodriguez aided and abetted those violations.

## SEVENTH CLAIM FOR RELIEF
### (Against All Defendants)
### Violations of Section 207 of the Advisers Act

101.    Paragraphs 1 through 70 are re-alleged and incorporated by reference as if fully set forth herein.

102.    Section 207 of the Advisers Act makes it unlawful for any person to make any untrue statement of material fact in any registration application or report filed with the Commission, or to willfully omit to state in any such application or report any material fact required to be stated therein.

103.    By reason of the activities described herein concerning Juno's false amended

21

Forms ADVs, Juno violated Section 207 of the Advisers Act, and Verzili and Rodriguez aided and abetted those violations.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests a Final Judgment:

### I.

Permanently enjoining the Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder, Sections 203A, 206(1), 206(2), 206(4) and 207 of the Advisers Act [15 U.S.C. §§ 80b-3A, 80b-6(1), (2) and (4), and 80b-7], and Rules 206(4)-2, 206(4)-4 and 206(4)-8 thereunder [17 C.F.R. §§ 275.206(4)-2, 275.206(4)-4, and 275.206(4)-8].

### II.

Ordering the Defendants, on a joint and several basis, to disgorge the ill-gotten gains received from their violative conduct alleged in this complaint, and to pay prejudgment interest thereon.

### III.

Ordering the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209 of the Advisers Act [15 U.S.C. § 80b-9].

## IV.

Granting such other and further relief as the Court may deem just and proper.

Dated: New York, NY
      March 15, 2011

George S. Canellos
Regional Director
Attorney for the Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center – Suite 400
New York, New York 10281
(212) 336-0106 (Kaufman)
Email: kaufmanja@sec.gov; salzbergm@sec.gov

Of Counsel:
Bruce Karpati
Robert Kaplan
Ken C. Joseph
Jack Kaufman
Mark D. Salzberg