UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, | : | 11 Civ. 1778 (TPG) |
| - against - | : | **OPINION** |
| JUNO MOTHER EARTH ASSET MANAGEMENT, LLC, EUGENIO VERZILI and ARTURO ALLAN RODRIGUEZ LOPEZ a/k/a ARTURO RODRIGUEZ Defendants. | : | |

Plaintiff SEC brings this action against defendants Juno Mother Earth Asset Management, LLC ("Juno"), Eugenio Verzili ("Verzili"), and Arturo Allan Rodriguez Lopez ("Rodriguez") for alleged violations of securities laws stemming from misrepresentations to investors and the SEC and the improper withdrawal of $1.8 million from a hedge fund advised by Juno and its principals Verzili and Rodriguez (collectively referred to as the "individual defendants"). Defendants move to dismiss several of the counts in the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the allegations do not state a proper claim for relief, and they move to dismiss the counts against Rodriguez pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process.

Both motions are denied.

**The Complaint**

Juno is a Delaware limited liability company that since 2007 has been registered as an investment adviser with the SEC. During 2007 and 2008, Rodriguez served as the Portfolio Manager for Juno, and Verzili served as its Chief Executive Officer and Chief Compliance Officer. Each individual defendant owned at least 25% of Juno during this time and, along with non-party Roland Jansen, controlled its daily operations.

Juno managed the investments of three hedge funds, only one of which—the Juno Mother Earth Resources Fund, Ltd. (the "Fund")—is relevant to this case. The Fund was incorporated in the Cayman Islands, and Rodriguez served on its board of directors along with two independent directors. Fortis Prime Fund Solutions (the "administrators") provided administrative services for the Fund. In 2006, Juno offered investors the opportunity to purchase shares in the Fund, and by 2007, Juno had raised approximately $16 million for the Fund.

The complaint alleges that through 41 transactions in 2007 and 2008, Verzili and Rodriguez withdrew around $1.8 million from Fund accounts to pay Juno's expenses and those of the individual defendants. Defendants first withdrew $642,000. When questioned about these withdrawals by fund administrators, defendants characterized the withdrawals as payments for Fund organizational expenses, as authorized by the private placement memorandum ("PPM") issued by Juno to prospective investors. Yet while these withdrawals were taking place, Verzili stated in an email sent to an investor

and copied to Rodriguez that Juno would only claim $100,000 of said organizational expenses. Furthermore, the PPMs subsequently issued by Juno continued to state that it would pay its own expenses with its own money.

After the Fund's independent directors learned from its administrators of the $642,000 of withdrawals, Verzili and Rodriguez withdrew $1.17 million from Fund accounts in exchange for promissory notes issued by Juno. The complaint claims that throughout this process defendants concealed their actions from the Fund's administrators, its independent directors, and its investors, despite having a fiduciary duty to disclose self-dealing transactions.

In addition, the complaint alleges that the individual defendants made affirmative misrepresentations about these transactions. First, in August 2008 board meeting, the individual defendants allegedly discussed the Fund's investments without mentioning its substantial stake in Juno's promissory notes. Second, Rodriguez allegedly told a suspicious investor that a bank account receiving Resource Fund money did not belong to Juno when it did.

When the Fund's independent directors learned of the promissory notes in October 2008, they demanded repayment of the withdrawn sums and removed Rodriguez from the board of directors. None of the $1.17 million has been repaid to date.

The complaint further alleges that defendants made misrepresentations to both investors and the SEC concerning the amount of assets under Juno's management and the amount of capital that the individual defendants had invested in the Fund. The complaint alleges that throughout Juno's existence,

its assets under management ("AUM") never exceeded $17 million dollars, and that Verzili and Rodriguez knew or recklessly disregarded that fact. Yet Verzili sent an email in March 2008 to an investor and Rodriguez that contained a doctored document falsely indicating that Juno managed an additional $40 million in assets managed by a separate investment advisor. Furthermore, Verzili sent another email to an investor and Rodriguez stating that Juno's partners—including the individual defendants—had $3 million of their own assets invested in the Fund. Verzili then sent an email in July 2008 to another investor and Rodriguez in which he claimed that the partners currently had $1 million invested in the Fund. Individual defendants, however, invested nothing in the Fund.

Lastly, the complaint alleges that Verzili and Rodriguez, in an effort to maintain Juno's registration as an investment advisor despite its failure to meet the statutory $25 million AUM threshold for registration, caused Juno's attorney to file an amended Form ADV[1] with the SEC which falsely claimed that Juno had entered into an agreement with Mother Earth Investments AG to sub-manage $40 million of that company's assets. Using the information supplied by Verzili with the approval of Rodriguez, the attorney falsely represented to the SEC that Juno had $56 million in AUM. The Form ADV also claimed that Juno neither sold securities that it owned to advisory clients nor recommended the purchase of securities to advisory client in which it had an interest, despite the Fund's purchase of Juno's promissory notes. Furthermore,

[1] A Form ADV is the form used by investment advisers to register with the SEC.

the Form claimed that Juno did not have custody of advisory clients' cash, despite the repeated withdrawals by the individual defendants of such cash.

**The Counts**

Based upon these facts, plaintiff alleges seven different legal violations.

Count One alleges that all defendants violated federal securities laws banning fraudulent statements to investors in connection with the sale or purchase of securities.[2] This count is predicated on the allegedly false statements contained in the Fund's PPM and the false statements personally made by the individual defendants to prospective investors.

Count Two alleges that all defendants violated Sections 206(1) and 206(2) of the Investment Advisers Act ("Advisers Act")[3] by defrauding the Fund's investors while acting as investment advisers. This count is predicated on substantially the same factual allegations as Count One.

Count Three alleges that all defendants violated Section 206(4) of the Advisers Act[4] and associated Rule 206(4)-8[5] by making material misrepresentations to the Fund's investors while acting as investment advisers. This count is predicated on substantially the same factual allegations as the prior two counts.

Count Four alleges that Juno violated Section 206(4) of the Advisers Act[6]

---

[2] Count One alleges violations of the following provisions: Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and Rule 10b-5 of the Securities Exchange Act, 17 C.F.R. § 240.10b-5.

[3] 15 U.S.C. §§ 80b-6(1), (2).

[4] 15 U.S.C. § 80b-6(4).

[5] 17 C.F.R. § 275.206(4)-8.

[6] 15 U.S.C. § 80b-6(4).

and associated Rule 206(4)-2[7] by failing, as a registered investment adviser with custody of client funds, to either submit to an unannounced annual examination of its accounts by an independent accountant or release its audited financial statements to investors. Count Four also alleges that the individual defendants are liable for aiding and abetting Juno's violation.

Count Five alleges that Juno violated Section 206(4) and Rule 206(4)-4[8] by failing to disclose to the Fund's investors that its financial condition was reasonably likely to impair its ability to meet contractual commitments to clients. Count Five also alleges that the individual defendants are liable for aiding and abetting Juno's violation. Count Five is predicated on 1) the use of client funds to pay Juno's expenses, and 2) Juno's apparent failure to inform Fund investors that its finances necessitated such an action.

Count Six alleges that Juno violated Section 203A of the Advisers Act[9] by filing a false amended Form ADV to maintain its registration as an investment adviser despite is failure to meet the statutory $25 million AUM threshold for registration. Count Six also alleges that the individual defendants are liable for aiding and abetting Juno's violation. This count is predicated on the allegedly false AUM figure contained in the Form ADV filed by Juno with the SEC.

Count Seven alleges that Juno violated Section 207 of the Advisers Act[10] by making false statements in its amended Form ADV and that the individual defendants aided and abetted Juno's violation. This count is predicated on the

[7] 17 C.F.R. § 275.206(4)-2.
[8] 17 C.F.R. § 275.206(4)-4.
[9] 15 U.S.C. § 80b-3A.
[10] 15 U.S.C. § 80b-7.

inflated AUM figure as well as the non-disclosure of the $1.8 million withdrawal at the center of this case.

Plaintiffs seek to permanently enjoin the defendants from future violations of these provisions. They further seek an order of disgorgement and civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Securities Exchange Act, 15 U.S.C. § 78u(d)(3), and Section 209 of the Advisers Act, 15 U.S.C. § 80b-9.

**The Present Motions**

Defendants' move to dismiss the claims against Rodriguez pursuant to Rule 12(b)(5) for insufficient service of process, and they move to dismiss Count Two against the individual defendants, Counts Four and Five in their entirety, Counts Six and Seven against Rodriguez, and plaintiff's prayer for injunctive relief pursuant to Rule 12(b)(6) for failure to state a claim.

**Discussion**

<u>Motion to Dismiss for Insufficient Service of Process</u>

Defendants argue that Rodriguez was not properly served the complaint in Costa Rica pursuant to Fed. R. Civ. P. 4(f). The section of the rule at issue in the present motion, Rule 4(f)(2)(C)(i), provides that in the absence of an internationally agreed-upon means of service, personal service of the summons and complaint on an individual in a foreign country will suffice unless that method of service used is prohibited by the law of the country where defendant is served. Courts have interpreted Rule 4(f)(2)(C)(i) to permit "personal service so long as the law of the foreign jurisdiction does not specifically forbid

personal service." SEC v. Alexander, 248 F.R.D. 108, 111 (E.D.N.Y. 2007).

Defendants argue that Costa Rican law specifically prohibits the method used by the SEC to serve Rodriguez: personal service by a private investigator. Costa Rican Law 8687, which governs the domestic service of summons for actions in Costa Rican courts, only allows for personal service by an officer of the court or by a judicially authorized Costa Rican notary public. Moreover, when Costa Rican courts are called upon to execute the judgments of foreign courts, they must determine whether notice was served by the foreign court in accordance with the Costa Rican public order. Defendants assert that a Costa Rican court would look to the requirements of Law 8687 to make this determination. They argue that since Law 8687 does not authorize personal service by a private investigator, a Costa Rican court asked to enforce a judgment of this court would refuse on the ground that plaintiff's service violated the principles of Costa Rica public order—i.e. was prohibited by Costa Rican law.

To support this argument, defendants cite a case from the year 2000, no. 510-00 of the First Division of the Supreme Court of Justice in San José ("the 2000 case"), in which the Supreme Court refused to enforce a foreign judgment on the ground that the service of the judgment in Costa Rica violated Law 8687.

Plaintiff, on the other hand, stresses that Law 8687 does apply to the service of foreign summons in Costa Rica, and it cites Costa Rican case law that purportedly authorizes its chosen method of service. The first case, No.

0049-E89 from the First Chamber of the Supreme Court of Justice in San José in 1983 ("the 1983 case"), explicitly condones service of a foreign complaint in Costa Rica by methods not authorized for domestic summons, unless the service is "unlawful in the place of origin." In a second case from 2009, No.07-000033-0004-FA ("the 2009 case"), the Supreme Court of Justice held that two questions govern its determination of whether foreign notice comports with the Costa Rican public order: "a) if the respondent was correctly served in accordance with the laws of [the foreign country]; and b) if [defendant] received the summons and had the opportunity to defend himself." Plaintiff claims that these two cases demonstrate the Costa Rican law permits is chosen method of service.

The court holds the service of process in this case sufficient, for the simple reason that the 1983 case, the most relevant Costa Rican legal source, authorizes the method of personal service used by plaintiff. Personal service by a private investigator is lawful in the United States under Fed. R. Civ. P. 4(c)(2). Furthermore, defendants so served duly receive the summons and enjoy the opportunity to defend themselves. While defendants argue that the 1983 case came down before the passage of Law 8687, it cannot be said that Law 8687 overruled the 1983 case, since the 1983 case concerns the service of a foreign complaint in Costa Rica, and the statute concerns domestic service of domestic summons. Indeed, the 2009 case employs the same reasoning as the 1983 case, undercutting the argument that the 1983 case has been disavowed since the passage of Law 8687.

Accordingly, defendants' motion under Rule 12(b)(5) is denied.

Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). In deciding such a motion, a court must accept as true the facts alleged in the complaint, but it should not assume the truth of legal conclusions. Iqbal, 129 S.Ct. 1937 at 1950. A court must also draw all reasonable inferences in the plaintiff's favor, and it may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Count Two

Sections 206(1) and 206(2) of the Advisers Act forbid "any investment adviser" from employing "any device, scheme, or artifice to defraud any client or prospective client" and engaging in "any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. § 80b-(6). Defendants argue that while the complaint plausibly alleges that Juno is an investment adviser under the Advisers Act, it does not allege sufficient facts to support a reasonable inference that the individual defendants are investment advisers as defined in that statute. As a result, defendants claim that Count Two must be dismissed as a matter of law as to the individual defendants.

Section 202(11) of the Advisers Act defines "investment adviser" as "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities." 15 U.S.C. § 80b-2(11). The Second Circuit has interpreted the term to reach all persons who manage "the funds of others for compensation." Abrahamson v. Fleschner, 568 F.2d 862, 870 (2d Cir. 1977). Thus on this issue, the complaint need only allege that the individual defendants 1) managed the funds of others 2) for compensation.

Plaintiff has made this showing. The complaint alleges that Juno was the registered investment adviser for the Fund. It alleges that Rodriguez was the Portfolio Manager at Juno and Verzili its Chief Executive Officer and Chief Compliance Officer, and that individual defendants each owned 25% or more of Juno. In addition, the complaint references Juno's PPM for the Fund, which describes Verzili, Rodriguez, and non-party Jansen as "the individuals primarily responsible for managing the Investment Manager and the investments of the fund." The complaint also references Juno's Form ADV, in which both Verzili and Rodriguez are named managers of the fund. Lastly, the complaint references performance fees the individual defendants stood to receive for their services, and Juno's Form ADV indicates that Verzili and Rodriguez received performance fees as compensation. These allegations, accepted as true, clearly establish that the individual defendants managed the

funds of others for compensation and hence qualify as investment advisers under the Advisers Act. In conjunction with the factual allegations lodged elsewhere in the complaint, plaintiff states a plausible claim that the individual defendants defrauded the Fund's investors in violation of Sections 206(1) and 206(2) of the Advisers Act.

Count Four

Section 206(4) of the Advisers Act empowers the SEC to promulgate rules to prevent fraudulent acts by investment advisers. See 15 U.S.C. § 80b-6(4). To that end, Rule 206(4)-2 specifies that an investment adviser with custody of client funds must either provide for a surprise annual examination of its accounts by an independent accountant or release its audited financial statements to investors. See 17 C.F.R. § 275.206(4)-2.

Defendants argue that the complaint does not sufficiently plead that Juno had "custody" over client funds to trigger these audit obligations. Defendants claim that as a result Count Four be dismissed as to all defendants, since the individual defendants' liability is predicated on Juno's principal liability. They alternatively argue that, Juno's liability aside, the complaint does not adequately plead the *scienter* element necessary for aiding and abetting liability.

Defendants' first argument need not long detain the court. Rule 206(4)-2(c)(1) defines custody to include "any capacity…that gives you or your supervised person legal ownership of or access to client funds or securities." 17 C.F.R. § 206(4)-2(c)(1). Plaintiff's myriad allegations of improper withdrawals of

client funds readily establish that the individual defendants had access to, and hence custody of, client funds for purposes of Section 206(4) and Rule 206(4)-2. Furthermore, the complaint and the PPM it references both indicate that Juno could and did access client funds to pay the legitimate organizational expenses of the Fund. Thus even if the allegedly illegitimate acts of the individual defendants cannot be imputed to Juno, the complaint nonetheless plausibly alleges that Juno had access to, and custody of, client funds in its capacity as the investment manager of the Fund. It thus plausibly alleges that Juno violated Section 206(4) of the Advisers Act and Rule 206(4)-2 by failing to either provide for a financial examination by an independent accountant or turn over its financial statements to investors.

Defendants argue that plaintiff makes only conclusory allegations regarding the mental states of the individual defendants, and that these allegations are insufficient to state a claim for aiding and abetting a violation of Section 206(4) and Rule 206(4)-2.

To state such a claim, the complaint must allege (1) the existence of a predicate violation by the primary party; (2) *scienter* on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation. See S.E.C. v. DiBella, 587 F.3d 553, 566 (2d Cir. 2009). But the complaint need not allege that the aider and abettor actually knew about the principal violation of the Advisers Act. Rather, it suffices to allege that the aider and abettor recklessly disregarded the violation.

See S.E.C. v. Landberg, No. 11 Civ. 0404, 2011 U.S. Dist. LEXIS 127827, at *22-23 (S.D.N.Y. Oct. 26, 2011).

Thus the complaint need only plead sufficient facts to support a reasonable inference that the individual defendants knew or recklessly disregarded Juno's predicate violation. Plaintiff has done so. As noted above, the complaint alleges that the individual defendants controlled the daily operations of Juno and owned a significant portion of it. Plaintiff's other factual allegations underscore the substantial involvement of the individual defendants in all major aspects of Juno's affairs. Accepting these factual allegations as true, the court can reasonably infer—after discounting the complaint's legal conclusions about the individual defendants' mental states—that the individual defendants knew or recklessly disregarded Juno's alleged violation of Section 206(4) of the Advisers Act and Rule 206(4)-2.[11]

Count Five

Rule 206(4)-4, promulgated pursuant to the SEC's rule-making authority under Section 206(4) of the Advisers Act, requires an investment adviser with custody of client funds to tell its clients when its financial condition is reasonably likely to impair its ability to meet contractual commitments to clients. See 17 C.F.R. § 275.206(4)-4.

Defendant argues that the complaint does not adequately plead two elements necessary to state a claim for a violation of these provisions: 1) that

[11] Defendants claim that inferring *scienter* from these facts effectively renders individual defendants strictly liable for aiding and abetting Juno's predicate violation. The court, however, merely holds that plaintiff's allegations are sufficient to survive a motion to dismiss. Whether they are sufficient to succeed at trial or on motion for summary judgment is another matter.

defendants had custody of client funds and 2) that Juno's financial condition reasonably impaired its ability to meet its contractual obligation to its clients. The discussion above dispenses with the first point, but the second requires further analysis.

The complaint contains ample factual allegations that, accepted as true, support a reasonable inference that Juno was struggling to meet its financial obligations. After all, the complaint sets forth in relative detail how the individual defendants misappropriated funds to, in part, pay Juno's expenses. Defendants suggest that the withdrawals in question could have been legitimately undertaken pursuant to an agreement between the Resources Fund and Juno, such that the court should not infer from the withdrawals that Juno and the individual defendants resorted to misappropriation to prop up a failing company.

Defendants' argument is meritless. The complaint references the PPM that Juno issued to potential investors in the Fund, which states that the entire proceeds from sales of shares in the Fund, less its operational and organizational expenses, would be available for the Fund's investment activities. The speculative possibility of an undisclosed agreement overriding the PPM hardly undermines plaintiff's well-pleaded allegations that defendants disregarded the limitations of the PPM and withdrew the money in question in part to improperly benefit Juno.

Thus the court need not even refer to the complaint's conclusory assertions regarding Juno's dismal financial health to reasonably infer from the

specific allegations of misappropriation that defendants hatched the alleged scheme in part because Juno's financial condition impaired its ability to meet client commitments. Consequently, Juno's alleged failure to disclose its financial condition to investors states a plausible claim under Section 206(4) of the Advisers Act and associated Rule 206(4)-4, as does the further claim against the individual defendants for aiding and abetting this violation.

Counts Six and Seven

Section 203A of the Advisers Act forbids investment advisers from registering with the SEC unless they have at least $25 million in AUM. See 15 U.S.C. § 80b-3A. An investment adviser who anticipates meeting that threshold may register with the SEC by filing a Form ADV, but it must withdraw its registration if it fails to meet the AUM requirement within 120 days. See 17 C.F.R. § 275.203A-2. Section 207 of the Advisers Act forbids any person from making untrue statements of material fact in any registration with the SEC. See 15 U.S.C. § 80b-7.

Defendants argue that the complaint fails to state a claim for a violation of these provisions by Rodriguez, because it does not plausibly allege that he knew about or recklessly disregarded Juno's allegedly unlawful registration as an investment adviser via a falsely amended Form ADV.

It is true that the complaint principally alleges that Verzili supplied Juno's attorney with the false information submitted in Juno's amended Form ADV. Indeed, the complaint simply asserts that Rodriguez knew about Verzili's decision to falsify the form. Elsewhere, however, the complaint plausibly alleges

that Rodriguez knew about many of the specific falsehoods that surfaced in the Form ADV. For example, the complaint alleges that Rodriguez himself executed the promissory notes from Juno to the Resources Fund, and the failure to disclose these notes in Form ADV is at the heart of the violation alleged in Count Seven. In addition, the complaint alleges that Verzili copied Rodriguez on an email in which he improperly inflated Juno's AUM to $56 million, which inflation is at the heart of the violation alleged in Count Six.

More generally, the complaint alleges that Juno was a small company dominated by the individual defendants and that they closely coordinated their efforts to carry out and conceal their alleged improprieties. Juno's registration as an investment adviser through the Form ADV was not a minor bureaucratic adjunct to the larger alleged scheme. Rather, to the extent that registration signaled to investors that Juno managed assets in excess of $25 million, it was critical to maintaining Juno's credibility, as evidenced by its prominent mention in the Fund PPM. From these facts, the court can reasonably infer that Rodriguez knew or disregarded Juno's alleged violations of Sections 203A and 207 of the Advisers Act. Consequently, the complaint plausibly alleges that Rodriguez aided and abetted that violation.

The Prayer for Permanent Injunctive Relief

Defendants finally argue that plaintiff does not sufficiently allege the prerequisites necessary to establish its right to permanent injunctive relief and that as a result this component of plaintiff's prayer for relief should be stricken as a matter of law.

A court will only award a permanent injunction if the plaintiff proves that there "is a reasonable likelihood the wrong will be repeated." S.E.C. v. Commonwealth Chem. Sec., Inc., 410 F. Supp. 1002, 1020 (S.D.N.Y. 1976). Factors that inform this finding include defendants' past liability for securities violations; the willfulness of their acts; the sincerity of their renunciation of illegal conduct; their acceptance of responsibility; the frequency of the past conduct; and the likelihood that future violations may occur. See S.E.C. v. Universal Major Indus. Corp., 546 F.2d 1044, 1048 (2d Cir. 1976).

The very act of delineating these factors illustrates that this determination is a fact-intensive one best undertaken after the development of a record through discovery. Accordingly, the Second Circuit has held that where "the complaint plausibly alleges that defendants intentionally violated the federal securities laws, it is most unusual to dismiss a prayer for injunctive relief" at the motion to dismiss stage. S.E.C. v. Gabelli, 653 F.3d 49, 61 (2d Cir. 2011). Here, contrary to defendants' protestations, plaintiff has plausibly alleged that defendants intentionally violated federal securities laws, so the court will not dismiss plaintiff's prayer for injunctive relief.

**Conclusion**

For the foregoing reasons, defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(5) are denied.

Dated: New York, New York
March 2, 2012

Thomas P. Griesa
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/2/12