| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>                Plaintiff,<br><br>v.<br><br>JUNO MOTHER EARTH ASSET MANAGEMENT, LLC., EUGENIO VERZILI, ARTURO ALLAN RODRIGUEZ LOPEZ<br><br>                Defendants. | 11 Civ. 01778<br><br>**OPINION** |

Plaintiff Securities and Exchange Commission brings this civil-enforcement action against defendants Juno Mother Earth Asset Management, LLC ("Juno"), Eugenio Verzili, and Arturo Allan Rodriguez Lopez. The Commission charges defendants with fraudulently misappropriating approximately $1.8 million from a hedge fund that they controlled. In this motion for monetary relief, the Commission requests that defendants (1) disgorge the $1.8 million they misappropriated, (2) pay prejudgment interest on that sum, and (3) pay the highest available civil penalty.

The court grants the Commission's request.

## Background

**Details of Complaint**

1

Juno was a Delaware limited liability company that was registered as an investment adviser with the Commission. Juno managed the investments of three hedge funds, only one of which—the Juno Mother Earth Resources Fund, Ltd.—is relevant to this case. In 2006, Juno offered investors the opportunity to purchase shares in the Fund, and by 2007, Juno had raised approximately $16 million for the Fund.

Verzili served as Juno's Chief Executive Officer and Rodriguez served as Juno's Chief Investment Officer. Each owned at least a 25% partnership interest in Juno and controlled its day-to-day operations.

In 2007 and 2008, through a series of 41 separate transactions, Verzili and Rodriguez directed Juno to withdraw about $1.8 million from Fund accounts for their and Juno's benefit. Verzili and Rodriguez used the misappropriated funds, among other things, to pay for their apartment, personal travel, meals, entertainment, and purchases from department stores.

Verzili and Rodriguez misappropriated the $1.8 million through two fraudulent schemes. First, in 2007 and 2008, Verzili and Rodriguez misappropriated about $642,000 by making withdrawals from the Fund that they fraudulently characterized as payments for Fund expenses. In fact, defendants used the funds to pay Juno's business expenses and their own personal expenses. Defendants have not reimbursed the Fund for any of the misappropriated $642,000.

Second, defendants transferred an additional $1.17 million from the Fund to Juno's bank account.  Defendants concealed these transfers from the Fund's independent directors by creating the appearance that the transfers were legitimate Fund investments.  On nine separate occasions between January 9 and July 4, 2008, Verzili and Rodriguez transferred a total of $1.17 million from the Fund's accounts to Juno's bank account in exchange for promissory notes issued to the Fund by Juno.  However, the promissory notes were not investments for the benefit of the Fund but, instead, were created solely as a cover for defendants to obtain cash to pay Juno's operating expenses and to keep Juno from going out of business.  In essence, the Commission alleges that defendants used the promissory notes as vehicles for withdrawing cash from the Fund for their own benefit.  Defendants have not repaid any of the $1.17 million.

**Procedural Posture**

The Commission brought this action on March 15, 2011, charging defendants with violating the following antifraud provisions of the federal securities laws: Section 17(a) of the Securities Act, 15 U.S.C. §§ 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Sections 203A, 206(1), 206(2), 206(4), and 207 of the Investment Adviser Act, 15 U.S.C. §§ 80b-3A, 80b-6(1-4), and 80b-7; Rule 10b-5 promulgated thereunder, 17.C.F.R § 240.10b-5, and Rules 206(4)-2 and 20(4)-8 promulgated thereunder 17 C.F.R. §§ 275.206(4)-2 and 275.206(4)-8.

In July and August of 2012, this court issued consent judgments against defendants. The consent judgments enjoin defendants from violating the anti-fraud provisions of the federal securities laws. The consent judgments also provide that upon motion of the Commission, the court will determine whether to require defendants to disgorge funds, impose prejudgment interest on the amount to be disgorged, and impose a civil penalty against defendants. Moreover, the consent judgment explains that in connection with the Commission's motion for monetary relief, each defendant will be limited by the following conditions:

> (a) Defendant will be precluded from arguing that it did not violate the federal securities laws as alleged in the complaint; (b) defendant may not challenge the validity of the consent or this judgment; (c) solely for the purposes of such motion, the allegations of the complaint shall be accepted as and deemed true by the court…

The Commission filed the instant motion against defendants on May 15, 2013, requesting (1) disgorgement in the amount of $1.8 million, (2) prejudgment interest in the amount of $326,244.46, and (3) third-tier civil penalties.

## Discussion

*Disgorgement*

Once the district court has found federal securities law violations, the court has broad equitable power to fashion appropriate remedies, including ordering that defendants disgorge their profits. SEC v. First Jersey Sec. Inc., 1010 F.3d 1450, 1474 (2d Cir. 1996). "The primary purpose of disgorgement

4

as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws." Id. Through disgorging any ill-gotten gain, the court returns the defendants to their status quo prior to the wrongdoing. SEC v. Fabrice Tourre, No. 10. Civ. 3229 (KBF), 2014 WL 969442 at *6 (S.D.N.Y. March 12, 2014). Moreover, individual defendants and the corporate entities that they control may be held jointly and severally liable for disgorgement where the defendants and the corporate entity have worked closely together to obtain their illegal gains. See SEC v. AbsoluteFuture.com, 393 F.3d 94, 97 (2d Cir. 2004).

District courts also have broad discretion in calculating the amount to be disgorged. First Jersey, 1010 F.3d at 1474-1475. The amount of disgorgement "need only be a reasonable approximation of profits casually connected to the violation." SEC v. Patel, 61 F.3d 137, 139 (2d Cir. 1995). After the Commission has shown the approximate amount of profits to be disgorged, the burden shifts to the defendants to contest the Government's calculations. SEC v. Elliot, No. 09 Civ. 7594 (RJH), 2011 WL 3586454 at *11 (S.D.N.Y. Aug. 11, 2011).

In this case, the Commission requests that the court order defendants, jointly and severally, to disgorge the $1.8 million that they gained from their fraudulent schemes. The Commission argues that $1.8 million is the correct amount because as detailed in the complaint, defendants misappropriated this

amount through two fraudulent schemes that violated the antifraud provisions of the federal securities laws and regulations.

There can be no dispute as to the accuracy of these allegations because in their consent judgments, defendants acknowledged that for the purposes of the present motion, the "allegations of the Complaint shall be accepted as and deemed true by the Court."  When a defendant enters a consent judgment with the Commission and agrees not to challenge the details of the Commission's complaint, courts accept the allegations in the complaint to be true when deciding the Commission's subsequent motion for monetary relief.  See, e.g., SEC v. Kapur, No. 11 Civ. 8094 (PAE), 2012 WL 5964389 at *5 (S.D.N.Y. Nov. 29, 2012).  Thus, despite defendants' arguments to the contrary, it is undisputed that as described in the complaint, defendants fraudulently withdrew $1.8 million from the Fund.

While the defendants claim that they do not have the money to pay the Commission, the court does not consider the defendants' financial situation to be a valid defense to the request for disgorgement.  SEC v. Save the World Air, Inc., No. 01 Cv 11586 (GBD), WL 3077514 at *17-18 (S.D.N.Y. Nov. 16, 2005).  Accordingly, the Commission has presented a "reasonable approximation of profits causally connected to the violation," Patel, 61 F.3d at 139, and the court orders defendants to disgorge $1.8 million.

**Prejudgment Interest**

6

The court also has discretion to grant prejudgment interest on the ill-gotten gains and to determine the rate of any such interest. First Jersey, 1010 F.3d at 1476. An award of prejudgment interest on the amount of disgorgement ensures that defendants do not profit from obtaining the time-value of any unlawful profits earned from the date of the fraud to the date that judgment is entered. SEC v. World Information Technology, Inc., 590 F. Supp. 2d 574, 578 (S.D.N.Y. 2008).

The terms of the consent judgments negate defendants' opposition to the imposition of prejudgment interest. The consent judgments state that the court shall order prejudgment interest on any disgorgement, which "shall be calculated beginning from the dates on which defendant received ill-gotten gains (February 2007 to July 24, 2008), based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. 6621(a)(2)." Thus, the consent judgments make clear that defendants are required to pay prejudgment interest on the amount of any disgorgement award.

The Commission calculated the prejudgment interest from November 1, 2008, through April 20, 2013, (the month after the last date of ill-gotten gains received by defendants) to be $326,244.46. The court finds that defendants are required to pay this amount to the Commission.

**Civil Money Penalty**

7

Finally, the Commission requests that the court impose third-tier civil penalties on defendants. Both the Securities Act and the Exchange Act authorize three tiers of monetary penalties, in increasing severity, for statutory violations. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3). A first-tier penalty may be imposed for any violation; a second-tier penalty may be imposed if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and a third-tier penalty may be imposed when, in addition to meeting the second-tier requirements, the "violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." SEC v. Razmilovic, 738 F.3d 14, 38 (2d. Cir. 2013) (quoting 15 U.S.C. §§ 77t(d)(2) (A)-(C) and 15 U.S.C. §§ 78u(d)(3)(B)(i)-(iii)).

Each tier provides that, for each violation, the amount of the penalty shall not exceed the greater of a specified monetary amount or the defendants' gross pecuniary gain. Id. For the time period at issue in this case (February 2007 to October 2008), the statutory maximum penalties were $6,500 for a first-tier penalty, $65,000 for a second-tier penalty, and $130,000 for a third-tier penalty. 15 U.S.C. §§ 77t(d) & 78u(d) (2000). The civil penalties statutes permit the imposition of a penalty for each violation. 15 U.S.C. §§ 77t(d), 78u(d)(3).

Though the maximum penalty is set by statute for each violation, the actual amount of the penalty is left to the discretion of the district court. SEC

v. Kern, 425 F.3d 143, 153 (2d Cir. 2005).  In exercising this discretion, courts weigh "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition."  SEC v. Haligiannis, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007).  Ultimately, civil penalties are designed to punish the individual violator and deter future violations of the securities laws.  SEC v. Moran, 944 F. Supp. 286, 296 (S.D.N.Y. 1996).

    The court has already considered most of these factors in determining that defendants must disgorge $1.8 million, and consequently, the court finds that the factors enumerated in Haligiannis weigh in favor of imposing third-tier civil penalties.  In all, through a pattern of behavior—namely, forty-one separate transactions—defendants knowingly defrauded the Fund and its investors of $1.8 million.  Thus, there might be a third-tier penalty of $130,000 penalty *for each of the forty-one fraudulent transactions*.

    However, Lopez and Verzili have submitted declarations to the court documenting their dire financial situations.  Both defendants report that they have not been employed since 2010, do not have a consistent source of income, and are dependent upon their families for financial support.

Given defendants demonstrated current and future financial condition and also to have the penalties within the realm of reason, the court imposes one third-tier civil penalty of $130,000 against each defendant. The defendants are not jointly and severally liable for the third-tier civil penalties. See SEC v. Pentagon Capital Management, PLC., 725 F.3d 279, 288 (2d Cir. 2013).

## Conclusion

The court grants the Commission's motion for monetary relief and orders (1) defendants to disgorge $1.8 million, (2) defendants to pay prejudgment interest on the ill-gotten gains in the amount of $326,244.46, and (3) Verzili and Rodriguez to each pay a third-tier civil penalty of $130,000.

This opinion resolves item 46 on the docket.

SO ORDERED.

Dated: New York, New York
       March 31, 2014

_____
Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/14